IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| KARL FLORES, | Case No. 19-cv-329-DKW-WRP |
| Plaintiff, | **ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND (2) DISMISSING THE COMPLAINT WITH PARTIAL LEAVE TO AMEND** |
| vs. | |
| CITY & CNTY. OF HONOLULU, *et al.*, | |
| Defendants. | |

Flores brings this excessive force action against the City and County of Honolulu (the City) and Officer Joshua M. Kirito under 42 U.S.C. Section 1983 and Hawaii law. Flores alleges that after a vehicle crashed onto his property in July 2017, Officer Kirito arrived on scene and, without provocation, began punching him in the face and chest in apparent response to Flores photographing the vehicle's driver. Defendants move for dismissal under Fed.R.Civ.P. 12(b)(6) on the basis that Flores has failed to allege sufficient facts to state a claim against the City and because Officer Kirito is a "redundant defendant." Dkt. No. 9.

Because the direct claims against the City (Counts I and IV) are only supported by conclusory statements, and Officer Kirito is *not* a "redundant defendant" insofar as the individual capacity claims against him are concerned, the motion to dismiss is GRANTED IN PART AND DENIED IN PART, and the Complaint (Dkt. No. 1) is DISMISSED WITH PARTIAL LEAVE TO AMEND.

# FACTUAL & PROCEDURAL BACKGROUND

Early in the evening on July 2, 2017, Plaintiff Karl Flores was away from his home when he received a phone call and learned that a vehicle had crashed into his property. Dkt. No. 1, ¶ 14. At about 8:30 p.m., Flores returned to his home to find that his neighbors had apprehended the driver of the stolen vehicle until police arrived. *Id.* at ¶¶ 15-17. Once police and medical personnel were on the scene, the driver was placed in the back of an ambulance and the rear doors were left open. *Id.* at ¶ 17.

When Flores began taking pictures of the driver and the property damage, Flores avers that, without any provocation, Officer Kirito ran to Flores, punched him in the chest, attempted to grab the cell phone from Flores' hand, punched Flores again in the chest, backhanded Flores in the face, and hyperextended Flores' wrist. *Id.* at ¶¶ 18–19. Despite the physical encounter, Flores was not arrested, he was not taken into custody, and his phone was not confiscated. *Id.* at ¶ 20.

Flores later reported the assault and spoke to a captain and lieutenant with the Honolulu Police Department (HPD). *Id.* at ¶ 21. HPD allegedly never followed up with Flores and withheld unspecified information. *Id.* at ¶ 23.

Nearly two years after the confrontation with Officer Kirito, Flores filed this lawsuit on June 26, 2019. Dkt. No. 1.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed.R.Civ.P. 8(a)(2). Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

On a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw "any reasonable inferences" in favor of the plaintiff. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008). To that end, a court must judge the sufficiency of a complaint under a two-pronged approach: (1) disregard all "legal conclusions" and "conclusory statements"; and (2) determine whether the remaining "well-pleaded factual allegations," accepted as true, "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009). Dismissal is warranted "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Interpipe Contracting,*

*Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018) (quoting *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)).

Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. That is, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

## **DISCUSSION**

The Complaint lacks focus and clarity, requiring the Court to deconstruct the claims against each Defendant. Notwithstanding, the Court interprets the Complaint to raise five counts: (1) violation of the Fourth Amendment by Officer Kirito and the City; (2) assault and battery by Officer Kirito; (3) intentional, willful, or reckless

conduct by Officer Kirito; (4) negligent training and supervision by the City; and (5) negligence by Officer Kirito.[1]

Before turning to the merits, there is a procedural infirmity to address. Litigants must comply with local rules, and "[o]nly in rare cases will [the Ninth Circuit Court of Appeals] question the [district court's] exercise of discretion in connection with the application of local rules." *Sekhon v. BAC Home Loans Servicing LP*, 519 F. App'x 971, 972 (9th Cir. 2013) (quoting *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (district court properly dismissed complaint pursuant to local rule as a result of plaintiff's failure to oppose motion for dismissal)). Local Rule 7.2 requires an opposition to a motion set for a hearing to be "filed at least twenty-one (21) days prior to the date of the hearing . . . An opposition . . . that is untimely filed may be disregarded by the court or stricken from the record." LR 7.2.

Here, the hearing on Defendants' motion to dismiss was set for October 18, 2019. *See* Dkt. No. 10. Flores was required to file his response in opposition twenty-one days prior to that date; that is, no later than September 27, 2019. Thus, Flores'

---

[1] To the extent Flores asserts claims against the City for assault and battery and negligence under Counts II and V, respectively, by alleging that the City is liable for its "failures to train, supervise, investigate and/or discipline Officer Kirito" and that Officer Kirito's "supervising officers negligently breached duties to ensure that Kirito exercised. [*sic*] reasonable judgment," *see* Dkt. No. 1, ¶¶ 41, 56, these allegations are subsumed by Flores' claim against the City for negligent training and supervision under Count IV.

opposition was untimely when he filed it on September 30, 2019. Dkt. No. 12.[2]
Although LR 7.2 gives the Court the discretion to strike Flores' late opposition, Dkt. No. 12, the Court declines to do so—this time. Counsel is cautioned that continued failures to adhere to the Court's rules may result in more significant consequences should those practices persist.

I. **Claims Against Officer Kirito**

Defendants' motion primarily focuses on the deficiencies in the claims alleged against the City. Dkt. No. 9-1 at 4–9. Indeed, Defendants do not argue that the allegations, accepted as true, fail to allege that Officer Kirito's conduct amounted to excessive force, assault, or negligence. Rather, because "[a] suit against a [government] official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," *see, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, (1989); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."), Defendants contend Officer Kirito is a "redundant defendant" and should be dismissed because he was sued only in his official capacity. Dkt. No. 9-1 at 9–10.

---

[2]The Court further notes that Flores failed to comply with LR 7.4(f) because his opposition brief exceeds ten pages, but does not include the required "table of contents and a table of authorities." Counsel should be aware of these rules as they are available at no cost on the Court's public website.

Defendants misread the Complaint, at least in part. The caption of the Complaint names Officer Kirito "in his Official Capacity." Dkt. No. 1 at 1. The Complaint, however, also plainly alleges that Officer Kirito "is being sued in both his individual and official capacities." Dkt. No. 1, ¶ 4. As such, to the extent Officer Kirito is named in his Official Capacity, he is a "redundant" defendant, and those claims are dismissed. To the extent Officer Kirito is named in his individual capacity, however, the "redundant" defendant argument does not apply. Those claims may proceed.

## II. Section 1983 Claim Against the City (Count I)

Pursuant to 42 U.S.C. Section 1983, Flores asserts a claim against Officer Kirito and the City for Officer Kirito's alleged use of excessive force in violation of the Fourth Amendment to the United States Constitution. Dkt. No. 1, ¶¶ 28–36.[3] As noted, Defendants only challenge the City's liability under this particular count, identifying several defects in the Complaint. Dkt. No. 9-1 at 4–6. The Court agrees that Flores has failed to state a Section 1983 claim against the City.

### A. Legal Framework: Municipal Liability

It is axiomatic that "a municipality cannot be held liable under § 1983 on a

---

[3]Flores also seems to allege violations of the Hawaii Constitution in Count I. *See* Dkt. No. 1, ¶¶ 9, 33. The City has not argued that Flores has failed to state such claim. Therefore, whether Flores has a viable claim under the Hawaii Constitution is a question the Court will leave for another day when the parties have fully briefed the issue.

*respondeat superior theory*," that is, "*solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). Instead, Section 1983 liability attaches only where a "policy or custom" of the municipal entity was the "moving force [behind] the constitutional violation" allegedly committed by the officer. *Id.* at 694. The Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality . . . has caused an employee to [violate plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997). To that end, Flores must *sufficiently allege*[4] that "(1) [Officer Kirito's conduct] amounted to an unconstitutional application of excessive force, and (2) the City's policy caused the constitutional wrong." *Lowry v. City of San Diego*, 858 F.3d 1248, 1255 (9th Cir. 2017) (*en banc*). Only the second element is at issue.

Municipal policies and customs include (1) "the decisions of a government's lawmakers," (2) "the acts of its policymaking officials," and (3) "practices so persistent and widespread as to practically have the force of law." *Connick v.*

---

[4]The *Twombly-Iqbal* standard "applies to *Monell* claims." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (dismissing *Monell* claim because the plaintiff "did not put forth additional facts regarding the specific nature of [the] alleged 'policy, custom or practice'").

*Thompson*, 563 U.S. 51, 61 (2011). Moreover, these may be "policies of 'action' and of 'inaction.'" *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016). Construing the Complaint liberally, there are conclusory references to several municipal liability theories scattered throughout the Complaint. But Flores' allegations fall short under any theory.

### 1. Express Policy or Informal Custom or Practice

As a threshold matter, Flores has not pointed to an express City policy or custom that authorized Officer Kirito's conduct. *See Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010).[5] Nor has Flores alleged "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality) (citations and internal quotation marks omitted)); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). To be sure, Flores references only one incident involving the use of excessive force: His interaction with Officer Kirito on the date in question. But a custom-or-practice theory of municipal liability under Section 1983 cannot be "based solely on a single occurrence of unconstitutional action by a non-

---

[5]The only express City policy or custom identified anywhere in the Complaint is the HPD's policy explicitly *forbidding* "the use of force which is not reasonable or justifiable" in the particular situation. Dkt. No. 1, ¶ 25. Of course, an entity is not insulated from liability simply because its "written policy" prohibited the conduct in question. *See, e.g.*, *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 n.10 (9th Cir. 2016) (*en banc*).

policymaking employee." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

### 2. Failure to Train

Flores also alleges the City "failed to adopt and enforce reasonable policies and procedures and failed to reasonably train, supervise and/or discipline Officer Kirito thereby tolerating and ratifying the use of unreasonable and/or excessive force by its Police Officers." Dkt. No. 1, ¶ 49. But this conclusory assertion is not enough. *See AE*, 666 F.3d at 637.

Municipal liability "is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. As such, it is only "[i]n limited circumstances" that a municipality's "decision not to train certain employees" will constitute an official government policy. *Id.* A plaintiff can prevail under this theory "only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (emphasis added); *Connick*, 563 U.S. at 61.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."

*Connick*, 563 U.S. at 61 (quoting *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). In other words, a local government's policymakers must have had "notice that a course of training [was] deficient in a particular respect" and yet they continued to adhere "to an approach that they know or should know has failed to prevent tortious conduct by employees." *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 407). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to demonstrate that policy makers were on notice. *Id.* at 62 (quoting *Bryan Cty.*, 520 U.S. at 409).

Here, Flores has not identified any particular deficiency in the City's training of its officers, much less alleged facts to support the inference that there has been a series of similar constitutional violations in the past. Further, "*Monell*'s rule . . . will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *Canton*, 489 U.S. at 389. Flores also alleges in conclusory fashion that the City failed to train Officer Kirito. Dkt. No. 1, ¶¶ 49, 52.[6] But the fact "[t]hat

---

[6] To the extent Flores alleges that the City should be held liable for any failure to "supervise," Dkt. No. 1, ¶¶ 41, 49, 51, this theory is also unavailing. The "deliberate indifference" requirement applies to policies of inaction; namely, "negligent training" claims and "negligent supervision and hiring claims." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008). Thus, "[p]olicies of omission regarding the supervision of employees . . . can be 'policies' or 'customs' that create municipal liability . . . only if the omission 'reflects a deliberate or conscious choice' to countenance the possibility of a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (citations omitted). Here, nothing in the Complaint supports the inference that the City should have been aware that Officer Kirito had a propensity for violence

a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390–91; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 813, 823–24 (1985) (holding that a "nebulous 'policy' of 'inadequate training' on the part of the municipal corporation'" and a "single incident" of unconstitutional misconduct was not sufficient under *Monell*).

Although in "a narrow range of circumstances . . . the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations," this is not a case where the "rare" exception for single-incident liability applies. *Connick*, 563 U.S. at 63–64. This exception applies only where "the duties assigned to specific officers or employees" make "the need for more or different training . . . so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390; *Connick*, 563 U.S. at 63–64. For example, the Supreme Court has posed the hypothetical that a city can be said to have acted with deliberate indifference if it "arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training

---

so as to warrant close scrutiny while on the job, much less that *the City's policy makers* made a conscious choice not to supervise Officer Kirito when the incident occurred.

the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63 (citing *Canton*, 489 U.S. at 390 n.10).

Here, Officer Kirito allegedly assaulted Flores while he was taking pictures of an injured person in the back of an ambulance. Dkt. No. 1, ¶ 18. The "likelihood that the situation will recur" is unlikely and "the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights" is, at best, doubtful. *Bryan Cty.*, 520 U.S. at 409–10. Thus, assuming the City's policymakers made the decision not to train officers for this situation, it cannot be said that the "obvious" or "highly predictable consequence" of such a decision is the "violation of a specific constitutional or statutory right" so as to support the inference that the City acted with deliberate indifference. *Id.*; *see also Connick*, 563 U.S. at 71. Therefore, this is not a case where a failure-to-train can support single-incident liability for the City.

Because the Complaint boils down to naked assertions that there was "something the city 'could have done' to prevent the unfortunate incident" or the incident "could have been avoided if an [employee] had had better or more training," *Connick*, 563 U.S. at 67–68 (quoting *Canton*, 489 U.S. at 391, 392); *cf.* Dkt. No. 1, ¶¶ 31–32, 56, Flores' Complaint "says little about the [HPD's] training program or the legal basis for holding [the City & County of Honolulu] liable." *Canton*, 489 U.S. at 391.

### 3. A Policy-Making Official's Decision

That leaves the acts or decisions of policy-making officials. A municipality may be held liable where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986) (holding that a county was liable by virtue of the county prosecutor instructing the county sheriffs to forcibly enter plaintiff's clinic in violation of the Fourth Amendment). In contrast to where municipal liability is based on an alleged informal custom or act of omission, "[a] municipality can be liable for an isolated constitutional violation *when the person causing the violation has final policymaking authority*." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) (emphasis added); *Tuttle*, 471 U.S. at 823–24; *see also Collins v. Harker Heights*, 503 U.S. 115, 121–22 (1992) (reiterating that "decisions by subordinate employees" are generally not official policy). Here, however, nothing in the Complaint suggests that an official with "final policy making authority" ordered Officer Kirito to assault Flores or that Officer Kirito himself is such an official.[7] *See Pembaur*, 475 U.S. at 483. Put differently, Flores has failed to allege

---

[7]"[W]hether an official had final policymaking authority is a question of state law." *E.g.*, *Pembaur*, 475 U.S. at 483; *Hammer v. Gross*, 932 F.2d 842, 850 n.4 (9th Cir. 1991) (*en banc*). Further, it is "a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737 (emphasis in original). Here, besides Officer Kirito, it does not appear that even his lieutenant and captain supervisors at HPD could be considered policy-making officials. *See, e.g.*, Honolulu, Haw., Rev. Ordinances §§ 2-27.6, 6-44.2 to 6-44.6.

*facts* regarding "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385; *McDade*, 223 F.3d at 1141.

Municipality liability may also be premised on the theory that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002); *Praprotnik*, 485 U.S. at 126–27 (holding that decision to terminate plaintiff could not be imputed to the city's policy making officials). In the Complaint, Flores avers that he reported the assault to a captain and a lieutenant at HPD, but HPD, as an arm of the City, "failed to address, investigate, punish or prevent the excessive and unnecessary use of force by Officer Kirito, thereby ratifying and encouraging his unlawful and assaultive propensities." Dkt. No. 1, ¶¶ 21, 31. Flores then posits that the City had a "policy of condoning, ratifying and or failing to punish or prevent the excessive and unnecessary use of force . . ." *Id.* at ¶ 32. "But the mere failure to investigate the basis of a subordinate's discretionary decisions" is not a ratification of those decisions. *Praprotnik*, 485 U.S. at 130. Moreover, a policymaker's mere "acquiescence" in a single instance of alleged unconstitutional conduct does not constitute "ratification" for purposes of municipal liability. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992); *Praprotnik*, 485

U.S. at 130 (observing that "[s]imply going along with discretionary decisions" is not enough).

A different result might obtain if there were factual allegations of "*widespread practices* or evidence of *repeated constitutional violations* for which the errant municipal officers were not discharged or reprimanded." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001)); *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233–34 n.8 (9th Cir. 2011) ("[F]ailure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality."). Once again, however, Flores' theory is based solely upon an isolated instance of alleged errant misconduct by a single officer. If that were enough, municipal liability under Section 1983 would "collaps[e] into *respondeat superior* liability." *See Bryan Cty.*, 520, U.S. at 410; *Gillette*, 979 F.2d at 1348.

In sum, Flores' theories for imposing liability on the City amount to an attempted end-run around *Monell* that cannot be ignored. Count I is DISMISSED, albeit with leave to amend.[8]

---

[8]Because the deficiencies regarding Flores' *Monell* claim blatantly contravene well-established law, counsel would be well-served to read *Monell* and the other cases cited herein before any attempt is made to amend the Complaint: "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *Canton*, 489 U.S. at 385 (emphasis in original).

## III. Negligent Training and Supervision Claims Against the City (Count IV)

In Count IV, Flores asserts a claim against the City for "Negligent Training and Supervision." Dkt. No. 1 at 9–10. Although a claim for negligent training has not explicitly been recognized under Hawaii law, *see, e.g.*, *Hyun Ju Park v. City & Cty. of Honolulu*, 292 F. Supp. 3d 1080, 1102 n.14 (D. Haw. 2018); *Ryder v. Booth*, No. 16-00065, 2016 WL 27 2745809, at *11 (D. Haw. May 11, 2016); *Dowkin v. Honolulu Police Dep't*, No. 10-00087, 2012 WL 3012643, at *3 (D. Haw. July 23, 2012), Hawaii does recognize a cause of action for negligent supervision or control, *Abraham v. S. E. Onorato Garages*, 446 P.2d 821, 826 (Haw. 1968), and negligent hiring, *Janssen v. Am. Hawaii Cruises, Inc.*, 731 P.2d 163, 166 (Haw. 1987). Flores, however, has no claim under either theory.

First, "negligent supervision may only be found where an employee is acting <u>outside</u> of the scope of [their] employment." *Pulawa v. GTE Hawaiian Tel*, 143 P.3d 1205, 1220 (Haw. 2006) (emphasis in original) (quoting *Dairy Road Partners v. Island Ins. Co.*, 992 P.2d 93, 122 (Haw. 2000)). Here, Flores alleges the opposite: Officer Kirito's "acts were within the course and scope of his employment" with the City. Dkt. No. 1, ¶¶ 29, 40–41.[9]

Second, a cause of action for negligent hiring "depends upon foreseeability, that is, whether the risk of harm from the dangerous employee to a person such as

---

[9]Flores may, if he so chooses, plead separate and inconsistent claims. *See* Fed.R.Civ.P. 8(d).

the plaintiff was reasonably foreseeable as a result of the employment." *Janssen*, 731 P.2d at 166. The Complaint, however, is devoid of factual allegations indicating that the City could have foreseen the incident in question or that Officer Kirito had "assaultive proclivities." *See* Dkt. No. 1, ¶ 51.

Finally, even if this Court were to recognize a cause of action under Hawaii law for "negligent training," Flores has no such claim. The key to a negligent training claim, again, is "foreseeability." *Otani v. City & Cty. of Hawaii*, 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998), *aff'd*, 246 F.3d 675 (9th Cir. 2000). "If an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law." *Otani*, 126 F. Supp. 2d at 1308. Here, Flores has merely asserted that the City "failed to reasonably train . . . Officer Kirito." Dkt. No. 1, ¶ 49. Such a statement fits squarely within the class of "labels and conclusions" that are not sufficient to state a claim for relief. *Twombly*, 550 U.S. at 555. Therefore, Flores has not alleged *facts* indicating the City negligently trained its officers generally, or Officer Kirito specifically, regarding the use of force.

Having failed to state a claim for negligent hiring, supervision, or training under Hawaii law, Count IV is DISMISSED with leave to amend.

## IV. Punitive Damages

The remaining issue is Flores' prayer for punitive damages against the City. Dkt. No. 1, ¶¶ 41, 52; *see id.* at 11. The City correctly points out that such claims for relief must be dismissed. Dkt. No. 9-1 at 9–10. It is well established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981), and the same holds true under Hawaii law. *Lauer v. YMCA*, 557 P.2d 1334, 1342 (Haw. 1976). Therefore, Flores' prayer for punitive damages against the City is DISMISSED WITH PREJUDICE since leave to amend would be futile.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss the Complaint, Dkt. No. 9, is GRANTED IN PART AND DENIED IN PART. Flores may have until **December 9, 2019** to file an amended complaint, to the extent allowed herein and consistent with a litigant's ethical obligations under Fed.R.Civ.P. 11(b).

IT IS SO ORDERED.

DATED: November 7, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

*Karl Flores v. City & Cnty of Honolulu, et al*; Civil No. 19-00329 DKW-WRP; **ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND (2) DISMISSING THE COMPLAINT WITH PARTIAL LEAVE TO AMEND**